UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

CLIFTON ROBINSON,

       Plaintiff,

v.

                                  Case No. 1:22-cv-01569
                                  Judge Randolph D. Moss

J. HEMINGWAY, et al.,

       Defendants.

## PLAINTIFF'S SUPPLEMENT TO ORIGINAL COMPLAINT

Mr. Robinson filed a federal complaint against the Defendants on May 27, 2022, alleging, among other things, false imprisonment, racial discrimination, violation of due process, intentional infliction of emotional harm, and cruel and unusual punishment based on allegations that Defendants have not fulfilled their duty to enforce provisions of the First Step Act that would have resulted in Mr. Robinson's early release, and that they have intentionally fabricated evidence to exclude Mr. Robinson from early release from prison.

Since that filing, Mr. Robinson has been the subject of additional retaliatory conduct, and the courts have begun to force the BOP to properly enforce the early release provisions of the First Step Act in other cases.

### I. RETALIATION

As Mr. Robinson detailed in his original complaint, Ellison and the other Defendants fabricated the existence of a criminal warrant to exclude Mr. Robinson from consideration for halfway house placement. Once Mr. Robinson proved that this supposed warrant did not exist and wrote to the BOP's North Central Regional Office, he was submitted for halfway house placement in April 2022. To this date, he still does not have a halfway house designation.

Up until June of 2022, Mr. Robinson had agreed to pay $100 every quarter towards his restitution. Making only $5 a month, this money came out of periodic gifts given by his mother who is elderly, gravely ill, and on a fixed income. His June contribution of $100 was deducted from his trust fund on June 10, 2022.

Shortly after that, Mr. Robinson was called into Mr. Ellison's office. Mr. Ellison had found out about Mr. Robinson's federal lawsuit, and told Mr. Robinson that he must sign an agreement to increase his FRP payment to $300 quarterly, or he would "take away his halfway house for refusing to pay FRP." Mr. Ellison was clear that this would be $300 a quarter. Mr. Robinson objected, saying that he could not afford that much and asking for a copy of the BOP policy that stated that FRP refusal results in loss of halfway house. Mr. Ellison responded with profanity and repeated his threat. Mr. Robinson signed the agreement under duress, figuring that the $300 would be withdrawn the following quarter.

That same day, Mr. Robinson filed a "BP-8" (Informal Request for Remedy) with Mr. Ellison, to which Mr. Ellison is required to respond by BOP Policy. Mr. Robinson requested a copy of the policy which Ellison based his threat upon... the policy that said FRP refusal results in loss of halfway house. Ellison never responded to Mr. Robinson's greivance.

On July 7, 2022, $300 was removed from Mr. Robinson's trust fund account with a notation indicating that this was a monthly payment. Being 90% blind, Mr. Robinson cannot recall the exactly wording of the document that he was coerced into signing by Ellison, but he certainly cannot afford $300 a month. Ellison is effectively extorting Mr. Robinson's frail and elderly mother in order that Mr. Robinson can go home to her as early as possible. EXHIBIT A.

Upon seeing this unexpected payment, Mr. Robinson approached Ellison and requested a "BP-9" form (Formal Request for Administrative Remedy) to which Defendant Hemingway must reply. Ellison again responded with verbal abuse, and stated, "If you file a BP-9 because I refused to respond to your BP-8, I will reopen your

file right now and put you in as a 'refusal' so that you cannot get halfway house or FSA [Time Credits for early release]." Fearing ongoing retaliation, Mr. Robinson instead filed a "Sensitive BP-10," a confidential grievance regarding staff misconduct that goes directly to BOP regional counsel. EXHIBIT B.

Ellison's most recent abuse constitutes retaliation for Mr. Robinson's exercises of his First Amendment rights, including filing a lawsuit and filing a grievance. This ongoing abuse has added to Mr. Robinson's emotional distress and his false imprisonment. Moreover, the resulting stress on Mr. Robinson's mother on when or if she will see her son before she dies has contributed to a recent flair of her medical condition, resulting in her being on a ventilator in the ICU.

## II. FALSE IMPRISONMENT

The basis for this and other claims by Mr. Robinson in his original complaint is that the Defendants have refused and failed to properly credit him with the Earned Time Credits he has received under the First Step Act. Since filing his original complaint, the BOP's failures in this regard have been further documented by the media and the federal court.

FORBES published an investigative piece on this issue on June 4, 2022, stating, among other things (EXHIBIT C):

> While it is true that many inmates have been released, this response [from the BOP] does little to reduce the stress of thousands of inmates who are eligible for these credits and waiting on the BOP to let them out of prison
> [...]
> Meanwhile, inmates who should be released from prison are being held beyond what should be their termination date.

Mr. Robinson is one of those inmates. Without a doubt in this case, the defendants have the power and authority to properly apply Mr. Robinson's Time Credits, but continue to refuse to do so as retaliation and discrimination.

-3-

Because BOP defendants like Ellison, Lea, and Hemingway continue to manipulate the system and subvert the law in order to mete out their own personal punishment against prisoners that they do not like for one reason or another, like Mr. Robinson, more and more prisoners are now turning to the federal courts for relief (and getting it). For example, inmate Doug Dyer brought his fight to the U.S. District Court for the Eastern District of Tennessee (Case No. 1:21-cv-299-CLC-CHS, Dyer v. United States) and he won. The Court ordered the BOP to apply the 489 days of ETC's that he had earned. Unfortunately, Mr. Dyer had already been released, so he did not get out of prison early as Congress and Presidents Trump and Biden intended. The same is happening to Mr. Robinson.

In Stewart v. Warden (Case No. 1:22-cv-00294, N.D. Ala), the prisoner sued for application of his earned time credits. In a response declaration by the BOP, BOP staff acknowledged that the prisoner's earned time had been under-calculated and his earned time credits had not been applied, and then simply stated that they would not recaculate them, citing lack of staff. See Document 11-14. Not surprisingly, the Court ordered the BOP to recalculate and apply them in accordance with the law, even if they had to do it by hand.

In addition to the mounting court cases, President Biden issued an Executive Order on May 25, 2022 (EO No. 14074) directing the DOJ and BOP to "fully implement the First Step Act.

Despite direction now from all three braches of government, defendants Ellison, Lea, and Hemingway continue to submit Mr. Robinson to the cruel and unusual punishment of false imprisonment, and it is for this and his other claims that Mr. Robinson respectfully requests this Honorable Court to rule in his favor.

Respectfully Submitted,

Date: 7-17-22

Clifton Robinson

-4-

## CERTIFICATE OF SERVICE

I, Clifton Robinson, declare under penalty of perjury that I served the motion for leave to file a supplment and the attached supplment by placing a true and correct copy in the institutional mail, pre-paid USPS First Class, addressed to the Clerk of the U.S. District Court for the District of Columbia, 333 Constitution Ave, Washington, D.C. 20001, and I personally served these documents on all three defendants, Hemingway, Ellison, and Lea at FCI Milan, P.O. Box 1000, Milan, Michigan 48160.

EXHIBIT A

Date:   07/14/2022
Time:   10:06:35 AM

Location: MIL

# Federal Bureau of Prisons
## TRULINCS Account Transactions - Commissary
### Personal Inmate Information

Inmate No: 21794026   Inmate Name: ROBINSON, CLIFTON          Available Balance: $272.14

| Date | Reference # | Transaction Type | Sender Last name | Amount |
|------|-------------|------------------|------------------|--------|
| 06/10/2022 | 33322161 | Western Union | ROBINSON | $175.00 |
| 06/10/2022 | TL0610 | TRUL Withdrawal | | -$5.00 |
| 06/10/2022 | TL0610 | TRUL Withdrawal | | $1.35 |
| 06/10/2022 | 2594 | Child Support | | -$250.00 |
| 06/10/2022 | 2594 | BP 199 Request - Released | | $250.00 |
| 06/10/2022 | XFRP0622 | FRP Quarterly Pymt | | -$100.00 |
| 06/10/2022 | XIPP0522 | Payroll - IPP | | $5.25 |

Inmate #: 21794026

Date:   07/14/2022                                                                              Location: MIL
Time:   10:08:06 AM

# Federal Bureau of Prisons
## TRULINCS Account Transactions - Commissary
## Personal Inmate Information

Inmate No: 21794026  Inmate Name: ROBINSON, CLIFTON                    Available Balance: $272.14

| Date | Reference # | Transaction Type | Sender Last name | Amount |
|------|-------------|------------------|------------------|--------|
| 07/07/2022 | XFRP0722 | FRP Monthly Pymt | | -$300.00 |
| 07/07/2022 | XIPP0622 | Payroll - IPP | | $5.25 |

Inmate #: 21794026

EXHIBIT B
(temporarily withheld)

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

\*\*\* SENSITIVE BP-10 \*\*\*

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: _Robinson Clifton_    _21794-026_    _F_    _FCI Milan_
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**

\*\*\* SENSITIVE BP-10 \*\*\*

Because this Administrative Remedy details the blatant and retaliatory misconduct of BOP Staff that are in a position to further retaliate against me, I ask that this be treated as a SENSITIVE BP-10.

When I requested to be put in for a halfway house date in March of this year, I was told by FCI Milan Counselor Ellison that I had an active warrant out of Cook County, Illinois and was therefore not eligible for halfway house and he would not submit me for a date. I asked for a BP-8 form, and Ellison refused to give it to me, saying that because NCIC was not "public information" he could not give me ANY details of the warrant and he would not give me a BP-8. I had my representative outside of prison check with Cook County, the City of Chicago, and NCIC, and no warrant existed. In fact Cook County said they had no record of my name whatso-ever. I wrote directly to the BOP North Central Region regarding this issue, and they called Case Manager LEa and instructed him to put me in for a halfway house date, and he supposedly has. -------------------------------------------------------

(continued on attachment...)

_____    _____
DATE    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____    _____
DATE    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____    _____    _____    _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____
DATE    SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN    PRINTED ON RECYCLED PAPER    BP-230(13)
JUNE 2002

SENSITIVE REGIONAL ADMINISTRATIVE REMEDY Attachment - Clifton Robinson - 21794-026

I subsequently filed a federal lawsuit against Mr. Ellison and other FCI Milan Staff regarding this fabricated warrant and alleging racial discrimination, false imprisonment, violation of due process, and intentional infliction of emotional harm. See Robinson v. Hemingway, Lea, and Ellison, Case No. 1:22-cv-01569, U.S. Dist. Court for the District of Columbia.

Although I still have not received a halfway house date, U.S. Probation has inspected my residence (on 06/25/2022).

In June, Ellison called me to his office and told me to sign an agreement to increase my FRP contribution to $300 a quarter. Up until that point, I had been paying $100 a quarter. My only funds have been provided by my gravely ill mother, plus about $5/month in prison income. Yet, Mr. Ellison said that I must sign this agreement or I would "lose my halfway house" for being an FRP Refuse. I asked him to show me policy and he refused. I told him I could not afford it, but he assured me that it was only a quarterly payment of $300. However, $300 was deducted from my account a month after my last $100 payment, and the payment details indicate it is "monthly," which I will not be able to afford because this is simply money given to me by my mom on a fixed income. Ex A.

I asked Mr. Ellison for a BP-8 to request a copy of the BOP Policy that states that halfway house can be denied for FRP Refusal. I submitted the completed BP-8 to Mr. Ellison, and he has ignored it.

When I complained to Mr. Ellison that he lied to me about the payments and forced me to sign under duress as a form of retaliation, he used profane language against me. I asked him for a BP-9, and he stated that if I filed a BP-9 because he ignored my BP-8, then he would reopen my FRP and put me in as "refusal" so that I would lose my halfway house and FSA Time Credits.

I still have not received a halfway house date and my FSA Time Credits have not been fully applied as per the law. Given the retaliatory and discriminatory actions of my Unit Team, it seems clear that I will not get these early releases from prison that I have earned and deserved because the FCI Milan staff, particularly Ellison, are determined to keep me in prison for as long as possible in retaliation for writing them up and suing them.

As a side note, my mother is gravely ill... currently in the ICU on a ventilator, and the stress caused by being jerked around by Ellison and the staff has contributed to her deteriorating health.

As a remedy, I simply ask that my FSA Credits be fully applied as per the law, which would result in immediate release (June 1, 2022 by my calculations) and, if there is to be further delay, I ask for a definitive halfway house date.

Thank you for your time.

6/6/22, 12:22 PM

PERSONAL FINANCE

# As Biden Touts Action On First Step Act, Federal Prisoners Await Action From Bureau Of Prisons

Walter Pavlo Contributor ⓘ

*I write and consult on federal criminal law and criminal justice.*

Follow

Jun 4, 2022, 02:35pm EDT

Listen to article  9 minutes

0   ▤



New!

Click on the conversation bubble to join the conversation

Got it!

President Joe Biden stated in an Executive Order that he want the First Step Act implemented, but ... [+]  GETTY IMAGES

President Joe Biden's Executive Order 14074 on May 25, 2022 (*Advancing Effective, Accountable Policing and Criminal Justice Practices To Enhance Public Trust and Public Safety)* stated, "... *no one should be required to serve an excessive prison sentence ... My Administration will fully implement the First Step Act, including by supporting sentencing reductions in appropriate cases and by allowing eligible incarcerated people to participate in recidivism reduction programming and earn time credits.*" However, the Federal Bureau of Prisons (BOP) is not prepared to fully implement the policy and people are being held in prison for longer than necessary because of the agency's failures.

The First Step Act (FSA), signed by President Donald Trump in December 2018, allowed certain federal inmates to earn additional time off of their sentences by participating in certain programs and productive activities. The group most likely to earn these credits are minimum and low security inmates who also have demonstrated a low chance of returning to prison through their participation in programming. Inmates can earn up to a year off of their prison term and even additional time for living on home confinement at the end of their prison term. It is meaningful. However, the BOP has yet to develop an automated system to calculate the reduction in sentences under FSA, which has left many inmates wondering when their release date will be.

According to an internal BOP memorandum authored by Susan Giddings BOP Correctional Programs Branch, the BOP acknowledged in an internal email that they "... *know the institutions are likely getting a lot of calls from outside family members and/or questions from the inmates themselves. We ask that you refrain from referring inmates or their family members to the DSCC* [Designation and Sentence Computation Center] *or Central Office. As we move toward a fully automated auto-calculation process for the calculating and awarding of FTCs, neither the DSCC nor the Corrections Programs Branch are*

*directly involved in the process.*" Instead, Giddings directed institutions to have a canned response to inmates and their family members and asked "*for their patience*" during the implementation of a calculator to determine when FSA eligible inmates will be released. The following guidance was given to BOP staff by Giddings to tell those who asked about FSA credits:

"*As the Bureau has begun to award Federal Time Credits and to ensure inmates are eligible to both earn and apply Federal Time Credits are awarded their credits timely, an interim implementation plan has been established. While all eligible inmates are able to earn credits, the Agency is prioritizing those inmates who are within 24 months of their Statutory Release date and eligible to both earn and apply Federal Time Credits. The Agency is in the final stages of development and testing of an auto-calculation app, and once finalized all eligible inmates will have their records updated and the Federal Time applied consistently with the Federal Rules lanaguage. Neither the inmate's eligibility status nor the basis for the status is public information.*"

While it is true that many inmates have been released, this response does little to reduce the stress of thousands of inmates who are eligible for these credits and are waiting on the BOP to let them out of prison. Inmates are resorting to the administrative process within prisons to request action be taken to award them FSA credits. That process calls for inmates to address their grievances to their case manager, then the warden, then regional office and finally to the BOP's Central Office in Washington DC. The administrative process in the BOP is broken and many of those in prison have written to federal courts that staff have threatened them with sanctions for even using the process. Some inmates have resorted to federal courts to to address their demands after remedies fail. The problem is that many of these inmates requests are either not answered at all or denied at the last possible day before they go to the next level of remedy. In short, the process takes time and then

6/6/22, 12:22 PM

there is even more time to get through the courts. "Time" is something the BOP and the federal courts have but inmates consider it a precious commodity.

MORE FOR YOU

How To Get Approved For Student Loan Forgiveness

Student Loan Forgiveness Won't Be Available For Everyone, But This Plan Is Available Now

Biden Cancelled $1.5 Billion Of Student Debt For Borrowers, But You Can Still Apply Now

For Don Corneliu Hill, a minimum security inmate at the Edgefield Federal Prison camp in South Carolina, assistance to get his FSA credits may come too late. Hill asked for FSA credits that have thus far been withheld because of the lack of technology and manpower to calculate his credits. Hill filed a habeas corpus lawsuit in South Carolina. His case is before U.S. District Federal Magistrate Judge Kaymani D. West who must interpret whether Hill is due his credits.

---

**Forbes** | iQ Newsletter

### Are you money smart?

Investment news in plain English. Perfect for new investors who want to level up their game.

| Email address | | Sign Up |

You may opt out any time. By signing up for this newsletter, you agree to the Terms and Conditions and Privacy Policy

---

There is no need for Hill to be in court for this request if the BOP was simply carrying out the law and Biden's own directive to get FSA moving. Instead, the US Attorney's Office in South Carolina, who is representing

the FCI Edgefield's Warden in the civil action seeking relief, is opposing Hill's request. Assistant US Attorney Barbara Bowens filed a motion to have Hill's motion dismissed, partly because he has not gone through the full administrative remedy process. Bowens wrote, "*Petitioner* [Hill] *failed to exhaust administrative remedies before filing his petition, and as such, his claims are not ripe for review and must be dismissed.*" In sports this is known as running out the clock.

▶

Hill did start the administrative remedy process (known as a BP-8 to the case manager and a BP-9 to the Warden) and he never received a response on either of them. In March Hill, who is indigent as are 90% of all those convicted on federal charges, filed a habeas corpus motion from his prison cell in Edgefield. On June 3, the last day for a response after AUSA Bowens had asked for an extension of time, Bowens claimed that Hill's request should be denied. Hill now awaits a decision by Judge West.

Another former inmate, Doug Dyer, also fought for his FSA credits and only had them awarded after U.S. District Judge Curtis L. Collier

(Eastern District of Tennessee, Case No: 1:21-cv-299-CLC-CHS) ordered Dyer to receive 489 days pursuant to the First Step Act that had previously been denied by the BOP. Dyer received the credits after he had been released from prison but Judge Collier ordered the credits be applied toward his years of supervised release. In that case, both the BOP, through the administrative remedy process, and prosecutors fought in court to prevent Dyer from getting any FSA credits. It should not be this difficult.

The problems the BOP is having stem from a shortage of staff. Outgoing BOP Director Michael Carvajal told Congress in February 2022 that one of the agencies key priorities was fully staffing institutions. However, an internal memo from Carvajal on June 2, 2022 was circulated stating that "*staffing levels are currently trending downward nationwide*" and instituted new incentives to both keep people on staff and expand efforts to hire new staff. Current BOP employees will be offered a $1,000 recruitment incentive for each applicant who is referred and hired to the BOP.

It literally took an act of Congress to get some prison sentence relief, all who are eager to resume a new life on the other side of the fence. We also have two presidents (Biden and Trump), who could not be more different in their views, that agree on the implementation of the First Step Act but the agency tasked with that implementation is proving to be both inept and, seemingly, reluctant to take action. Meanwhile, inmates who should be released from prison are being held beyond what should be their prison termination date.

If Biden and congress want to implement the First Step Act, they need new leadership at the BOP, intervention to get caught up and clarity for those on the front line at these institutions. In his Executive Order press release, Biden ordered the Attorney General to update Department of

Justice policy as necessary to fully implement the First Step Act. If this is to happen, the Attorney General himself will have to take charge.

*Follow me on Twitter or LinkedIn. Check out my website or some of my other work here.*

 **Walter Pavlo**

Follow

I founded Prisonology, an expert network firm of retired Bureau of Prisons professionals, to work with defendants and criminal defense lawyers... **Read More**

Editorial Standards                                              Reprints & Permissions

ADVERTISEMENT

## Conversation

Read our community guidelines here

Be the first to comment...

Powered by ⚙ OpenWeb     Terms  |  Privacy  |  Feedback